UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FLAHERTY & CRUMRINE | ) | |
| PREFERRED INCOME FUND | ) | |
| INCORPORATED, ET AL., | ) | |
| | ) | CIVIL ACTION NO. |
| Plaintiffs, | ) | |
| | ) | 3:05-CV-1784-G |
| VS. | ) | |
| | ) | **ECF** |
| TXU CORP. and C. JOHN WILDER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are the following motions:  (1) the motion of the defendants,

TXU Corporation ("TXU") and C. John Wilder ("Wilder") (collectively, "the

defendants"), to dismiss the plaintiffs' first amended class action complaint pursuant

to FED. R. CIV. P. 12(b)(6) and 9(b) and the Private Securities Litigation Reform Act

of 1995 (the "PSLRA"); and (2) the motion of the plaintiffs, Flaherty & Crumrine

Preferred Income Fund, Inc., Flaherty & Crumrine Preferred Income Opportunity

Fund, Inc., Flaherty & Crumrine/Claymore Preferred Securities Income Fund, Inc.,

and Stan Haiduk (collectively, "the plaintiffs"), to strike specific portions of the

defendants' motion to dismiss.  For the reasons discussed below, the plaintiffs'

motion to strike is granted, and the defendants' motion to dismiss is also granted.

## I. BACKGROUND

The plaintiffs commenced this case on September 6, 2005.  Plaintiffs' Original

Class Action Complaint ("Original Complaint").  The plaintiffs amended their

complaint on November 28, 2005.  Plaintiffs' First Amended Class Action Complaint

("Amended Complaint").  On December 15, 2005, the defendants filed this motion

to dismiss.  Defendants' Motion to Dismiss ("Motion to Dismiss").  On January 20,

2006, the plaintiffs filed their motion to strike certain exhibits attached to the motion

to dismiss and the references made to those exhibits in the motion itself.  Lead

Plaintiffs' Motion to Strike ("Motion to Strike").

In their amended complaint, the plaintiffs allege three grounds of action under

the Securities Exchange Act:  (1) violation of Section 14(e),[1] (2) violation of Section

10(b) and Rule 10b-5,[2] and (3) controlling person liability against Wilder, TXU's

---

[1]      Section 14(e), as amended by the Williams Act of 1968, makes it
unlawful for any "person to make any untrue statement of a material fact or omit to
state any material fact necessary in order to make the statements made, in the light of
the circumstances under which they are made, not misleading, or to engage in any
fraudulent, deceptive, or manipulative acts or practices, in connection with any tender
offer or request or invitation for tenders, or any solicitation of security holders in
opposition [to] or in favor of any such offer, request or invitation."  Amended
Complaint ¶ 79 (quoting 15 U.S.C. § 78n(e)).

[2]      Rule 10b-5, promulgated to facilitate the enforcement of Section 10(b),
makes it illegal for any person "to make any untrue statement of a material fact or to
(continued...)

chief executive officer, under Section 20(a).[3]  Amended Complaint ¶¶ 78-88.  These

are all claims of fraud.  Specifically, the plaintiffs allege that the defendants

fraudulently misrepresented the temporal proximity and magnitude of a planned

stock repurchase program and dividend increase in order to induce the plaintiffs to

participate in a voluntary tender offer to purchase particular convertible securities.[4]

*Id.* ¶ 1.

       The concept and design of the tender offer emerged out of Wilder's "Three

Phase Restructuring Program."  *Id.* ¶ 20.  The program was meant to strengthen

TXU's balance sheet and increase the corporation's financial flexibility.  *Id.* ¶ 22.  One

---

[2](...continued)
omit to state a material fact necessary in order to make the statements made, in light
of the circumstances under which they were made, not misleading."  Amended
Complaint ¶ 83 (quoting 17 C.F.R. § 240.10b-5).

       [3]       A person who exerts control over a person who violates any provision of
the Securities Exchange Act can be held jointly and severally liable with the primary
violator.  Amended Complaint ¶¶ 86-88; 15 U.S.C. § 78t(a).  Controlling person
liability under Section 20(a) requires an underlying violation by the controlled
person; thus, if the case against the corporate defendants is dismissed, the case
against Wilder must necessarily also be dismissed.  *Southland Securities Corp. v. INSpire
Insurance Solutions, Inc.*, 365 F.3d 353, 383-84 (5th Cir. 2004); *In re Enron Corporation
Securities, Derivative & "ERISA" Litigation*, ___ F. Supp. 2d ___, 2006 WL 2034461
(S.D. Tex. July 20, 2006).

       [4]       There were two types of convertible securities involved in this
transaction:  (1) corporate units, which were slated for conversion to common stock
on November 16, 2004, and November 16, 2005, and (2) Income PRIDES, which
were slated for conversion on May 16, 2006.  Amended Complaint ¶¶ 12-13.
Because both types of securities would eventually convert to common stock, their
value on the secondary market was closely tied to the price of TXU's common stock.
Amended Complaint ¶ 15.

prong of the program called for the removal of the convertible securities from the market so as to allow TXU to avoid issuing approximately 36 million additional shares of common stock on the securities' conversion dates.  *Id.* ¶ 20.

On May 18, 2004, months before the tender offer, TXU announced that "[u]pon reaching the targeted balance sheet strength and financial flexibility, management would recommend that the Board of Directors reevaluate the current dividend policy. . . .  [M]anagement expects that this capital allocation program will enable management to recommend an increase of the dividend in 2006." *Id.* ¶ 22; News Release, *attached to* Amended Complaint *as* Exhibit A, at 5.  The press release indicated that TXU did not anticipate a dividend increase in 2004 or 2005. Amended Complaint ¶ 22.  Not long after the May press release, however, TXU began discussions with a financial advisor concerning the common stock dividend and scheduled a board meeting for October 2004 to discuss altering the dividend policy. Amended Complaint ¶¶ 23-24.

On September 15, 2004, TXU announced an issuer tender offer for up to 11,433,285 outstanding corporate units and 8,700,000 outstanding Income PRIDES. *Id.* ¶ 28.  The corporation determined the offering price for each security by applying a factor to the 20-day weighted average price of TXU common stock between September 20, 2004 and October 8, 2004.  *Id.* ¶ 32.  This resulted in offering prices that were greater than the securities' market value.  *Id.* ¶¶ 44, 46-48.  Those prices

were announced on October 12, 2004, and the offer was set to expire on October 13, 2004. *Id.* ¶¶ 33-34.

The offer itself (as well as forms filed with the SEC and the associated press release) contained the following language:

> As a part of its capital management and restructuring program and considering current business and market conditions, TXU Corp.'s management is evaluating whether it should recommend to the TXU Corp. Board of Directors that they reevaluate TXU Corp.'s current common stock dividend policy. *TXU Corp. cannot predict the outcome of management's evaluation, when, if at all, management would make a recommendation to the Board of Directors to change the current common stock dividend policy, or what management's recommendation might be.* In addition to any recommendation from management, the Board of Directors may consider other relevant factors in determining if and when to make a change in TXU Corp.'s common stock dividend policy.

*Id*. ¶ 35 (emphasis in original). The plaintiffs allege that this language is misleading because the defendants knew at the time the statements were made that a dividend increase was imminent.[5] *Id.* ¶¶ 64-66. Furthermore, the plaintiffs allege that the defendants intentionally released the misleading information into the market so as to suppress prices during the offering period, which allowed them to reduce their

---

[5]     On September 28, 2004, Wilder gave a presentation at a conference where he indicated that TXU's dividend policy was "under review." *Id.* ¶ 42; Merrill Lynch Global Power & Gas Leaders Conference:  TXU, *attached to* Amended Complaint *as* Exhibit H ("Wilder Presentation").  The plaintiffs allege that, like the language in the offer, Wilder's presentation understated and misrepresented the likelihood and scale of the dividend increase and stock repurchase.  Amended Complaint ¶¶ 42, 49-59.

outstanding debt more cheaply than if the market had been aware of the imminent dividend increase.  *Id.*

On October 12, 2004, just one day before the expiration of the offer, TXU management gave a detailed financial plan to certain credit rating agencies for the purpose of facilitating the agencies' determinations of whether an increase in TXU's annual dividend would adversely affect the corporation's credit rating.  *Id.* ¶ 45.  The tender offer then closed on October 13, 2004.  *Id.* ¶ 34.  On October 19, 2004, TXU management provided materials to the Board of Directors proposing a change in dividend policy, and on October 21, 2004, management actually recommended a 350% increase of the annual dividend on common stock and a 400% increase in the stock repurchase program.  *Id.* ¶¶ 50, 52-53.  During the interim between management's provision of the materials to the board and the final recommendation, TXU management received final reports from credit rating agencies informing the corporation that an increase in dividend payouts would not adversely affect its credit rating.  *Id.* ¶ 51.  Accordingly, on October 22, 2004, the board approved the dividend increase and the stock repurchase program.  *Id.* ¶ 53.

On October 25, 2004, TXU publicly announced its plan to increase the common stock dividend from $0.50 to $2.25 and to repurchase approximately 50 million shares of TXU common stock.  *Id.* ¶ 55.  Immediately following the announcement, the per-share value of TXU common stock jumped nearly 20%.  *Id.*

¶ 56.  The corporate units and the Income PRIDES experienced a lesser but similar

increase in value.  *Id*.  The plaintiffs allege that the defendants intentionally

defrauded them and other similarly situated holders of TXU securities by failing to

inform those who participated in the tender offer that a dividend increase and stock

repurchase was imminent.  *Id.* ¶¶ 64-66.

II.  ANALYSIS

A.  Motion to Strike

The plaintiffs have moved to strike exhibits G, H, J, K, L, M, and N. Motion to

Strike at 1.  The exhibits are of three basic types:  (1) exhibits G, L, M, and N are

documents filed by corporations with the Securities Exchange Commission ("SEC");

(2) exhibits J and K are official reports of the SEC; and (3) exhibit H is a news article.

Defendants' Response to Lead Plaintiffs' Motion to Strike at 4, 8 ("Response to

Motion to Strike").

Ordinarily, courts may not look beyond the pleadings when deciding a motion

to dismiss; however, in a securities fraud action, courts may take judicial notice of the

contents of documents that are (1) required to be filed with the SEC and (2) actually

filed with SEC.  *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir.

1996).  Such documents should only be considered for the purpose of determining

- 7 -

what statements are contained therein, not to prove the truth of the documents' contents. *Id.* at 1018.[6]

Exhibits G, L, M, and N are all documents that were (1) required to be filed with the SEC and (2) actually filed with the SEC.  Response to Motion to Strike at 4.  Exhibits G, M, and N were filed by TXU.  Motion to Strike at 4.  Exhibit L was filed by a third party corporation.  *Id.*  The plaintiffs contend that the only possible rationale for the attachment of the documents is to demonstrate that the defendants considered credit agency approval a prerequisite to increasing the common stock dividend (which is exactly the proposition that the plaintiffs seek to disprove).  *Id.*  Furthermore, the plaintiffs argue that judicial notice of these documents is not in accordance with the policy espoused in *Lovelace* in that these are not the documents containing the alleged misrepresentations or those that are alleged to be legally deficient.  Motion to Strike at 4, n.2.

---

[6]       The 5th Circuit has enumerated four major policies supporting this evidentiary rule:  (1) the documents are required by law to be filed with the SEC, and no serious question as to their authenticity can exist; (2) the documents are the very documents that are alleged to contain the various misrepresentations or omissions and are relevant not to prove the truth of their contents but only to determine what the documents stated; (3) a plaintiff whose complaint alleges that such documents are legally deficient can hardly show prejudice resulting from a court's studying of the documents; and (4) allowing district courts to take judicial notice of the contents of relevant documents is in accordance with the FED. R. EVID. 201(b)(2) because the contents represent facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  *Lovelace*, 78 F.3d at 1018, n.1.

The defendants counterargue that they included the SEC filings only to demonstrate "what information was disclosed to the market regarding the importance of credit rating agencies." Response to Motion to Strike at 5. The defendants' theory is a mere pretext. One of the underlying issues in the motion to dismiss is whether the plaintiffs adequately alleged scienter. *See* Motion to Dismiss at 23-24. That issue turns upon what weight the defendants placed on the importance of credit ratings. *Id*. The defendants' attempt to have the court take judicial notice of what information TXU disclosed to the market regarding the importance of such agencies is merely a roundabout way of asking the court to appreciate the truth of the statements. The contents of the documents are irrelevant for any other purpose. Accordingly, the court declines to take judicial notice of Exhibits G, L, M, and N.[7]

Exhibits J and K are official SEC reports. The plaintiffs argue that the court should decline to take judicial notice of them because they: "(1) don't [sic] disclose anything about TXU; (2) were not required to be filed with the SEC by TXU; and (3) were not actually filed with the SEC by TXU." Motion to Strike at 6. The Fifth Circuit's holding in *Lovelace* "relates to public disclosure documents required by law to be filed, and actually filed, with the SEC." *Lovelace*, 78 F.3d at 1018, n.1. Therefore,

---

[7]     Although the court declines to take judicial notice of these particular documents, it notes that the propositions stated therein are adequately supported by alternative authorities. *See* Motion to Dismiss at 16-17. The defendants provide numerous law review articles, cases, and other exhibits illustrating the importance of credit rating agencies. *Id.*

the *Lovelace* exception is inapplicable to these SEC generated documents.  Although the defendants cite multiple cases from several jurisdictions, they fail to direct the court to any Fifth Circuit case law that would justify this court in extending the *Lovelace* exception to cover administrative records.  The court, therefore, declines to do so and declines to take judicial notice of the documents.

Exhibit H is an article from CNNMoney.  *Lovelace* explicitly declines to extend judicial notice to this type of disclosure.  *Lovelace*, 78 F.3d at 1018, n.1 ("We stress that our holding relates to public disclosure documents required by law to be filed, and actually filed, with the SEC, and not to other forms of disclosures such as press releases or announcements at shareholder meetings.").  Accordingly, the court declines to take judicial notice of Exhibit H.

For these reasons, the plaintiffs' motion to strike is granted.

## B.  Motion to Dismiss

### 1.  *Applicable Pleading Standards*

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  There are two primary principles that guide the court's determination of whether dismissal under Rule 12(b)(6) should be granted.  First, a motion under Rule 12(b)(6) should be granted only if it appears beyond doubt that the nonmovants could prove no set of facts in support of their claims that would entitle them to relief.  *Conley v. Gibson*, 355 U.S.

41, 45-46 (1957); *Leffall v. Dallas Independent School District*, 28 F.3d 521, 524 (5th

Cir. 1994); see also *Kaiser Aluminum & Chemical Sales, Incorporated v. Avondale

Shipyards, Incorporated*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing 5B WRIGHT &

MILLER § 1357 at 598 (1969), for the proposition that "the motion to dismiss for

failure to state a claim is viewed with disfavor and is rarely granted"), *cert. denied*, 459

U.S. 1105 (1983).  Second, the court must accept all well-pleaded facts as true and

view them in the light most favorable to the nonmovant.  See *Capital Parks,

Incorporated v. Southeastern Advertising and Sales System, Inc.*, 30 F.3d 627, 629 (5th Cir.

1994); *Norman v. Apache Corporation*, 19 F.3d 1017, 1021 (5th Cir. 1994); *Chrissy F.

by Medley v. Mississippi Department of Public Welfare*, 925 F.2d 844, 846 (5th Cir.

1991).  However, conclusory allegations and unwarranted factual deductions will not

suffice to avoid a motion to dismiss.  *United States ex rel. Willard v. Humana Health

Plan of Texas Incorporated*, 336 F.3d 375, 379 (5th Cir. 2003).

Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances

constituting fraud or mistake shall be stated with particularity."  FED. R. CIV. P. 9(b).

The Fifth Circuit interprets Rule 9(b) strictly, requiring the plaintiff to "specify the

statements contended to be fraudulent, identify the speaker, state when and where

the statements were made, and explain why the statements were fraudulent."

*Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir.), *cert. denied*, 522 U.S.

966 (1997); *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 412 (5th Cir. 2001).  In

addition to the heightened pleading requirements of Rule 9(b), the Private Securities

Litigation Reform Act ("PSLRA") requires that a plaintiff in a securities fraud case

"state with particularity facts giving rise to a strong inference that the defendant

acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2); *Zonagen*, 267 F.3d

407 ("a plaintiff alleging a section 10(b)/Rule 10b-5 claim must now plead specific

facts giving rise to a strong inference of scienter.") (internal quotations omitted).  The

PSLRA, at a minimum, incorporates the Rule 9(b) pleading standard.  *Abrams v. Baker

Hughes Inc.*, 292 F.3d 424, 431 (5th Cir. 2002).  Under the PSLRA, the court

considers whether all the facts and circumstances, taken together, give rise to a strong

inference of scienter.  *Id.*; *Zonagen*, 267 F.3d 425.  Finally, circumstantial evidence can

support a strong inference of scienter; however, allegations of motive and

opportunity, standing alone, cannot give rise to the necessary strong inference.

*Abrams*, 292 F.3d at 430; *Zonagen*, 267 F.3d at 410-412.

## 2.  *The Plaintiffs' Claims*

In order to state a section 10(b)/Rule 10b-5 claim, a plaintiff must allege, in

connection with the purchase or sale of securities, (1) a misstatement or an omission

(2) of a material fact (3) made with scienter (4) on which the plaintiffs relied (5) that

proximately caused the plaintiffs' injury.  *Abrams*, 292 F.3d at 430; *R2 Investments

LDC v. Phillips*, 401 F.3d 638, 641 (5th Cir. 2005).  The elements of a section 14(e)

claim are "identical" to the section 10(b)/Rule 10b-5 elements.  *Smallwood v. Pearl*

*Brewing Co.*, 489 F.2d 579, 605 (5th Cir.), *cert. denied*, 419 U.S. 873 (1974).  The

aforementioned heightened pleading standards of Rule 9(b) and the PSLRA apply

equally to both claims.  See *Hollywood Casino Corp. v. Simmons*, No. 3:02-CV-0325-M,

2002 WL 1610598 (N.D. Tex. July 18, 2002) (applying heightened pleading

standards to both claims).  Accordingly, this court will address both claims

simultaneously.

        In their amended complaint, the plaintiffs allege three specific instances where

the defendants either affirmatively misrepresented the status of the dividend increase

and repurchase program or made material omissions pertinent thereto.[8]  Amended

Complaint ¶¶ 35-39.  The amended complaint adequately specifies with particularity

which documents contain the alleged misrepresentation and omissions, when and

where those documents were filed, and why the plaintiffs believe them to be

misleading.  Amended Complaint ¶¶ 1, 35-59.  Furthermore, the plaintiffs adequately

demonstrate that the alleged misstatement and omissions were material to the

plaintiffs' decisions to participate in the tender offer.  Amended Complaint ¶¶ 60-63.

The only real issue, then, is whether the plaintiffs "state[d] with particularity facts

giving rise to a strong inference that the defendant acted with the required state of

mind."  15 U.S.C. § 78u-4(b)(2).

---

        [8]        These misrepresentations and omissions are denominated in the
amended complaint as "The Dividend Statement," "The Dividend Omission," and
"The Repurchase Omission."  Amended Complaint ¶¶ 35, 39.

- 13 -

In order to state a section 14(e) or section 10(b)/Rule 10b-5 claim, the

plaintiffs must allege particularized facts that support a strong inference of scienter.

*Abrams*, 292 F.3d at 430.  The Fifth Circuit defines scienter as "an intent to deceive,

manipulate, or defraud or that severe recklessness in which the danger of misleading

buyers or sellers is either known to the defendant or is so obvious that the defendant

must have been aware of it."  *R2 Investments*, 401 F.3d at 643 (quoting *Southland*

*Securities*, 365 F.3d at 366) (internal quotations omitted).  The plaintiffs allege that

the defendants intentionally misled them by failing to disclose the temporal

proximity and magnitude of the impending dividend increase and stock repurchase;

however, they also allege, rhetorically at least, that if the defendants did not

intentionally mislead them, then the defendants were severely negligent in their

dissemination of information prior to the close of the tender offer.  Amended

Complaint ¶¶ 64, 68.

This assertion rests solely on circumstantial evidence -- the plaintiffs have no

smoking gun to support their allegations; rather, their argument is based on a series of

inferences.  Amended Complaint ¶¶ 64-69.  They argue that the defendants had

motive and opportunity to defraud the stockholders via the tender offer because the

corporation needed to remove the convertible securities before their scheduled

conversion dates.  Amended Complaint ¶ 64.  Failing to disclose the imminency of

the dividend increase and stock repurchase artificially depressed the value of the

securities, the plaintiffs maintain, thereby allowing TXU to purchase the securities more cheaply than if it had fully disclosed the impending dividend increase and repurchase program.  Amended Complaint ¶ 64.  As proof of the defendants' knowledge that a dividend increase was a foregone conclusion prior to the termination of the tender offer, the plaintiffs proffer the following facts:  (1) TXU developed the three-stage restructuring plan; (2) TXU retained a financial advisor; (3) TXU notified the Board of Directors that a meeting was set for October to discuss increasing the dividend; and (4) TXU submitted a detailed financial plan to credit rating agencies to support the dividend increase.  Their arguments are logically supported by the assertion that "decisions of this magnitude are not proposed, evaluated, recommended and approved in the space of a week."[9]  Response to Motion to Dismiss at 3.

While circumstantial evidence can support a strong inference of scienter, *Zonagen*, 267 F.3d at 410 ("circumstantial evidence can support a strong inference of scienter"), the plaintiffs' inferential line of reasoning fails to meet the strict pleading standards of the PSLRA.  The plaintiffs' allegation of motive and opportunity, even when viewed in light of the defendants' actions and the temporal proximity of the

---

[9]     The defendants cite a plethora of cases from numerous jurisdictions in an effort to demonstrate that it is "blackletter law" that timing alone cannot support a strong inference of fraud.  Motion to Dismiss at 5, n.10.  While this argument is meritorious, the defendants' motion is granted because the amended complaint lacks particularized facts demonstrating scienter.

dividend increase to the tender offer, lacks particularized evidence indicating that the defendants intentionally misled the plaintiffs.[10]  Prior to and during the tender offer, the defendants repeatedly disclosed that the dividend policy was being reevaluated and that any increase in the annual dividend was contingent upon the execution of certain business initiatives and transactions.  Amended Complaint ¶ 22.  The four facts pleaded by the plaintiffs, as set forth above, are insufficient to give rise to a strong inference of scienter because they do not plainly invalidate those disclosures; in fact, hiring a financial advisor and submitting a financial plan to credit rating agencies appears to substantiate the defendants' disclosure that the dividend policy was under review.

When the quantum of facts pled by the plaintiffs in this case is compared to Fifth Circuit PSLRA precedent, it becomes even more evident that the plaintiffs fall short of showing a strong inference of scienter.  See *Zonagen*, 267 F.3d at 425 (finding a strong inference of scienter where corporate executives affirmatively misrepresented the patent status of the corporation's only product in order to raise the corporation's stock price); *Abrams*, 292 F.3d at 432 (refusing to find a strong inference of scienter where company executives affirmatively represented that the corporation had no

---

[10]     Properly understood, motive and opportunity are "only an analytical device for assessing the logical strength of the inferences arising from particularized facts pled by a plaintiff to establish the necessary mental state.  The PSLRA requires that the necessary strong inference of scienter must arise from 'facts' stated in the complaint 'with particularity.'"  *Zonagen*, 267 F.3d at 411.

internal accounting issues the day after two financial officers quit even though it was later revealed that there were significant accounting irregularities at the time -- the court noted the lack of internal or external documents revealing scienter); *R2 Investments*, 401 F.3d at 644 (refusing to find a strong inference of scienter where the defendants made affirmative misrepresentations regarding the corporation's cash-on-hand situation even though the plaintiffs alleged that specific officials knew that material information was omitted from public disclosures).

As the plaintiffs have failed to plead, with particularity, facts giving rise to a strong inference of scienter, their complaint must be dismissed. *Zonagen*, 267 F.3d at 407 ("The PSLRA also provides that if a plaintiff does not [carry its burden of pleading], the district court 'shall,' on defendant's motion, 'dismiss the complaint.'") (quoting 15 U.S.C. § 78u-4(b)(2)).

## III.  CONCLUSION

For the reasons stated above, the plaintiffs' motion to strike is **GRANTED**, and the defendants' motion to dismiss is also **GRANTED**.  The plaintiffs' first amended class action complaint is **DISMISSED** with prejudice for failure to state a claim on which relief can be granted.

**SO ORDERED**.

August 30, 2006.

A. JOE FISH
CHIEF JUDGE

- 17 -